UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
FILED

FEB 0 1 2005

Michael N. Milby, Clerk

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| DENETTE JOHNSON, | ) ) |
| COURTNEY CUBBISON MOORE, | ) ) |
| JOHN TRACY, | ) ) |
| ROBERT HARP, | ) ) |
| ANTHONY DIZONA, and | ) ) |
| KELLY DYER, | ) ) |
| Defendants. | ) ) ) ) |

CIVIL ACTION NO. H-05-0332

Complaint for Injunctive and
Other Equitable Relief and
Civil Monetary Penalties Under
The Commodity Exchange Act

The United States Commodity Futures Trading Commission ("Commission"), by its attorneys alleges as follows:

## I.    Summary

1.      As is more fully alleged below, defendants Denette Johnson, Courtney Cubbison Moore, John Tracy, Robert Harp, Anthony Dizona and Kelly Dyer (collectively "Defendants") have engaged in acts and practices that constitute violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2002).

2.      Specifically, from at least October 2001 through June 2002 (the "Relevant Period"), Defendants Johnson, Moore, Tracy, Harp, and Dizona violated Section 9(a)(2) of the

Act, 7 U.S.C. § 13(a)(2), by knowingly delivering through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false, misleading or knowingly inaccurate information concerning market information or conditions that affected or tended to affect the market price of natural gas. All Defendants further violated Sections 6(c), 6(d) and 9(a) of the Act by delivering biased market information in an attempt to manipulate the price of natural gas, a commodity in interstate commerce.  Defendants Moore and Dyer also violated Section 13(a) of the Act, 7.U.S.C. §13c(a), by aiding and abetting the violations of Defendants Johnson, Moore, Tracy, Harp and Dizona.  Defendant Johnson is liable for all violations of the Act during the relevant period as a controlling person under Section 13(b) of the Act, 7 U.S.C. §13c(b).

3.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, the Commission brings this action to enjoin such acts and practices, and compel compliance with the provisions of the Act.  In addition, the Commission seeks civil penalties and such other ancillary relief as the Court deems necessary or appropriate under the circumstances.

4.      Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as more fully described below.

## II.      Jurisdiction and Venue

5.      This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person, or, to enforce compliance with the Act whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

6.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e), in that some Defendants are found in, inhabit and transact business in this District,

and the acts and practices in violation of the Act have occurred, are occurring, or are about to

occur within this District.

### III.   The Parties

7.      Plaintiff Commission is an independent federal regulatory agency that is charged

with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et*

*seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*

8.      Defendant Denette Johnson ("Johnson") of The Woodlands, Texas was, during

the relevant period, the head of the West Trading Desk at Coral Energy Resources, L.P. and an

employee of Shell Trading Gas and Power Company, both of which are located at 909 Fannin

Street, Suite 700, Houston, Texas.

9.      Defendant Courtney Cubbison Moore ("Moore") of Houston, Texas was, during

the relevant period, a trader on the West Trading Desk at Coral Energy Resources, L.P. and an

employee of Shell Trading Gas and Power Company, both of which are located at 909 Fannin

Street, Suite 700, Houston, Texas.

10.     Defendant John Tracy ("Tracy") of Murrieta, California was, during the relevant

period, a trader on the West Trading Desk at Coral Energy Resources, L.P. and an employee of

Shell Trading Gas and Power Company, both of which are located at 909 Fannin Street, Suite

700, Houston, Texas.

11.     Defendant Robert Harp ("Harp") of Houston Texas was, during the relevant

period, a trader on the West Trading Desk at Coral Energy Resources, L.P. and an employee of

Shell Trading Gas and Power Company, both of which are located at 909 Fannin Street, Suite 700, Houston, Texas.

12.     Defendant Anthony Dizona ("Dizona") of Spring, Texas was, during the relevant period, a trader on the West Trading Desk at Coral Energy Resources, L.P. and an employee of Shell Trading Gas and Power Company, both of which are located at 909 Fannin Street, Suite 700, Houston, Texas.

13.     Defendant Kelly Dyer ("Dyer") of San Diego, California was, during the relevant period, an analyst on the West Trading Desk at Coral Energy Resources, L.P. and an employee of Shell Trading Gas and Power Company, both of which are located at 909 Fannin Street, Suite 700, Houston, Texas.

## IV.     Facts

### A.     The Natural Gas Price Indexes and Defendants' Natural Gas Trading

14.     During the relevant period, natural gas was a commodity that traveled in interstate commerce through a network of pipelines across the United States. Defendants Johnson, Moore, Tracy, Harp and Dizona (collectively, the "Trader Defendants") were traders employed by Shell Trading Gas and Power ("STGP") and were in the business of buying and selling natural gas for profit on behalf of Coral Energy Resources, L.P. ("Coral"). Among other things, Trader Defendants entered into transactions calling for the physical delivery of natural gas on behalf of Coral. Such transactions were called "physical" trades. Physical trades occurred at fixed prices or at index prices. When physical trades require the delivery of a specific amount of physical natural gas for each day of the following month, the trades are commonly known in the market as "baseload" trades.

4

15.     All Defendants were employees of STGP, which is a North American company engaged to provide Coral with the services of Defendants.  Coral is a North American energy company engaged in the buying, selling, transportation and storage of physical energy commodities including, but not limited to, physical natural gas.  Trader Defendants also bought and sold natural gas and related instruments for speculative purposes on behalf of Coral.  Trader Defendants engaged in these trading activities to generate a profit for Coral.

16.     During the Relevant Period, Defendants were engaged in trading natural gas for Coral's West Desk, which was responsible for trading natural gas in certain discrete areas of the western United States.  Defendants Moore, Tracy, Harp and Dizona were traders on the West Desk.  Defendant Johnson was a trader as well as the head of the West Desk, and Defendant Dyer was the analyst on the West Desk.  Defendant Moore also performed some analyst duties.

17.     Defendants' employer also established a trading desk for trading natural gas futures and options contracts on the New York Mercantile Exchange ("NYMEX") and other related financial instruments valued on the price of natural gas.  At times, Defendants instructed traders on the NYMEX desk to enter into futures transactions on the NYMEX for hedging and speculative purposes.

18.     Trader Defendants traded a variety of instruments, including contracts involving fixed-price, physical natural gas and index-based, over-the-counter, physical natural gas.

19.     During the relevant period, Trader Defendants reported natural gas market information, *i.e.*, price and volume data of purported natural gas trades, to certain services that provide natural gas price indexes ("Reporting Firms").  The Reporting Firms to whom Trader Defendants reported price and volume data included Platts, a division of The McGraw-Hill Companies, which issued a monthly index for various natural gas hubs titled *Inside FERC Gas*

*Market Report ("IFERC")* and a daily index for various natural gas hubs titled *Gas Daily*. Trader Defendants also reported natural gas market information to Intelligence Press, Inc., which issued a monthly index for various natural gas hubs titled *Natural Gas Intelligence* ("*NGI*").

20.     During the relevant period, STGP and Coral maintained a company policy on Communication with Pricing Agencies. As a condition of employment, each Defendant agreed to be bound by this company policy. The policy prohibits communicating deal/price information to recognized journalists of reputable publications by any employee other than those employees in nominated positions. The policy further states that "It is not in Shell's interest that this reporting of information is distorted . . . ." Defendant Johnson, while head of the West Desk, took no steps to enforce this policy.

21.     *IFERC* and *NGI* natural gas price indexes were used by a variety of market participants in the spot and over-the-counter derivatives markets to price and settle their natural gas deals. *IFERC* and *NGI* natural gas price indexes were used by natural gas futures and options traders for price discovery and for assessing price risks.

22.     During the relevant period, *IFERC* and *NGI* sought to compile their price indexes using price and volume information taken from actual, fixed price, physical, natural gas trades executed between two counterparties. Accordingly, *IFERC* and *NGI* sought from Trader Defendants specific market information, i.e., price and volume data, derived from fixed price, physical, natural gas trades the traders actually executed. Trader Defendants knew that *IFERC* and *NGI* sought to compile their indexes using such market information. Trader Defendants submitted price and volume data to *IFERC* and *NGI* so that they would use the Trader Defendants' market information in compiling their indexes.

23.     Consequently, because market participants use *IFERC* and *NGI* in the natural gas spot, over-the-counter derivatives, futures, and options markets, the price and volume data reported by the Trader Defendants to those publications is market information that affects or tends to affect the price of natural gas in interstate commerce.

**B.     Defendants' Delivery of False, Misleading and Knowingly Inaccurate Market Information to Compilers of Natural Gas Price Indexes**

24.     During the Relevant Period, Trader Defendants knowingly delivered information regarding thousands of individual fixed-price, physical, baseload natural gas trades for the West Desk as "Coral" trades to *IFERC* and *NGI*.  However, the vast majority of these trades reported to *IFERC* and *NGI* by Trader Defendants were not trades actually executed by STGP or Coral. Instead, the vast majority of trades reported by Trader Defendants were trades that were purportedly executed between other market participants.

25.     Trader Defendants knew that the trades described in paragraph 24 and reported to *IFERC* and *NGI* were false, misleading or inaccurate because Defendants knew that the trades reported as "Coral" trades were not Coral trades.  At no time during the relevant period did any Defendant take any steps to comply with or enforce the company's policy on Communication with Pricing Agencies.

26.     Specifically, on a monthly basis from as early as October 2001 and continuing to at least June 2002, Trader Defendants knowingly delivered reports containing knowingly inaccurate fixed-price, physical, baseload trade information for at least nine (9) locations, including El Paso Permian Basin, San Juan Basin, Southern California, PG&E Citygate, PG&E Topock, Malin, Rockies, Northwest Pipeline.  For example, on June 28, 2002, Trader Defendants reported as "Coral Energy Resources July 2002 Deals" trade information for 158 separate fixed-price, physical, baseload trades at these locations.  However, during the pertinent bidweek of

June 2002, all traders on the West Desk actually executed a total of 13 fixed-price, physical, baseload trades at those locations. Further, only one trade that Trader Defendants actually executed appears on the spreadsheet provided to *IFERC*. Trader Defendants' reports of fixed price, physical, baseload trade information for these locations were sent to *IFERC* and *NGI*, both of which issued price indexes for at least some of those locations.

**C.      Attempted Manipulation**

27.      During the Relevant Period, Trader Defendants were responsible for trading physical natural gas in interstate commerce.

28.      During the Relevant Period, Trader Defendants were responsible for reporting trade data connected to Trader Defendants' fixed-price, physical, baseload trades to *IFERC* and *NGI* on a monthly basis. During the Relevant Period, Trader Defendants reported trade data represented to be fixed-price, physical, baseload trades via facsimile and e-mail. The Trader Defendants reported trade data for those locations for which they executed physical natural gas transactions.

29.      *The "Index Directions" Price Manipulation Scheme*: Each month during bidweek, from at least October 2001 to January 2002, and from March 2002 until approximately June 2002, Defendant Dyer circulated an e-mail specifically to the individuals on the West Desk that reported trade information to *Inside FERC* and *NGI*, including Trader Defendants, hereinafter the "Index Directions e-mail." In February 2002, Defendant Moore circulated an e-mail that was functionally the same as the Index Directions e-mail. This e-mail was circulated prior to circulation of the spreadsheet used to report information to *IFERC* and *NGI*. The Index Directions e-mail was also circulated after the NYMEX natural gas futures contract had expired

for the prompt month.  During this window of time, usually on or about the last day of bidweek, Defendant Dyer sent out the Index Directions e-mails.

30.     The Index Directions e-mails included as an attachment a spreadsheet listing the locations for which the West Desk reported price and volume information to the indexes.  The spreadsheet also contained three columns of information for each location.  The first column contained the trader's mark, *i.e.*, the trader's estimate of what the index would publish as the price for a location.  Each mark, or estimate, was obtained from the trader who was primarily responsible for the trading activity at a particular location.  This same trader was also responsible for submitting trade information that would be reported to the price indexes.  The mark was obtained earlier by Defendant Dyer from the pertinent trader.  The second and third columns were titled "Up" and "Down," respectively.  Under the Up and Down columns were the words "Bad" or "Good".  The word "Bad" was in a red-colored font and the word "Good" was in a green-colored font.  Below is an example of the spreadsheet that was sent with the "Index Directions" e-mail dated October 31, 2001.

| | Up | Down |
|---|---|---|
| NW | 2.5900 Bad | Good |
| San Juan | 2.7300 Bad | Good |
| Malin | 2.9000 Bad | Good |
| Socal | 2.9600 Bad | Good |
| Gate | 3.0400 Good | Bad |
| Perm | 2.8300 Bad | Good |
| Sumas | 2.8400 Bad | Good |
| PG&E Top | 2.9700 Bad | Good |

This particular Index Direction e-mail also includes the text "Please see the attached spreadsheet about where we should report indexes."

31.    Defendant Dyer inputted the words "good" or "bad" in the e-mail's spreadsheet depending on whether the index publishing above or below the trader's mark would positively or negatively affect Coral's revenues.

32.    The purpose of the Index Directions e-mail was to direct Trader Defendants to report trade information to the price indexes so that it would benefit Coral's revenues.  In responding to the Index Directions e-mail, Trader Defendants knowingly reported biased trade information to *IFERC* and *NGI* with the intent to affect the price of natural gas in interstate commerce.  If the manipulation of the price of natural gas had been successful, it could have affected the price of natural gas, a commodity in interstate commerce, and the price of natural gas futures and options contracts traded on the NYMEX.

33.    Specifically, at locations where Coral had exposure to the published indexes, Trader Defendants overwhelmingly reported so as to positively affect Coral's revenues.  Further, all of the volumes reported to *IFERC* and *NGI* were vastly inflated, which would tend to give the trades reported by Trader Defendants greater influence over the ultimately published price index.

34.    The trade data reported by Trader Defendants during the Relevant Period was identified as "Coral Energy Resources [MONTH-YEAR] Deals" and was always reported in a form that made it appear that the trades being reported were fixed-priced, physical, baseload trades executed by Coral Energy Resources during bidweek.  Defendants knew that *IFERC* and *NGI* requested information regarding fixed-price, physical, baseload trades.

35.    During the relevant period, Defendant Johnson, while head of the west trading desk, controlled the activities of, and was aware of, the price reporting activities of the other defendants, as well as the Index Directions manipulative scheme, but did not take any steps to prevent these activities.  Further, in spite of the fact that Defendant Johnson controlled the

activities on the west trading desk, she took no steps to enforce the company policy regarding communicating with pricing agencies.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### Count I:  Knowing Delivery of Knowingly Inaccurate Information

36.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

37.     It is a violation of Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2), for any person, *inter alia*, "knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce . . . ."

38.     Defendants Johnson, Moore, Tracy, Harp and Dizona violated Section 9(a)(2) of the Act when they knowingly delivered by facsimile and via e-mail or other means in interstate commerce reports to *IFERC* and *NGI* that contained false, misleading and knowingly inaccurate market information, such as price and volume information for purported natural gas trades, as well as entirely fictitious purported natural gas trades, and/or failed to include actual natural gas trades by Defendants.

39.     Each and every false, misleading and knowingly inaccurate report knowingly delivered by Defendants Johnson, Moore, Tracy, Harp and Dizona to *IFERC* and *NGI*, as described above, is alleged herein as a separate and distinct violation of Section 9(a)(2) of the Act, 7 U.S.C. §13(a)(2).

### Count II:  Attempted Manipulation of the Natural Gas Price Indexes

40.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

11

41.     Sections 6(c) and 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 6(c), 6(d), and 13(a)(2),
make it illegal for any person to attempt to manipulate the market price of any commodity in
interstate commerce, or for future delivery on or subject to the rules of any registered entity,
including any contract market.

42.     Defendants Johnson, Moore, Tracy, Harp, Dizona and Dyer (a) had the intent to
affect the market price of natural gas in interstate commerce, and (b) overtly acted in furtherance
of that intent to affect the market price of natural gas.

43.     Each and every act of attempted manipulation, as described above, is alleged
herein as a separate and distinct violation of Sections 6(c) and 6(d) and 9(a)(2) of the Act, 7
U.S.C. §§ 6(c), 6(d), and 13(a)(2).

### Count III:  Aiding and Abetting

44.     Paragraphs 1 through 43 are realleged and incorporated herein by reference.

45.     Section 13(a) of the Act, 7 U.S.C. §13c(a), makes it illegal for any person to
willfully aid, abet, counsel, command, induce or procure the violation of any provision of the
Act, or who acts in combination or concert with any other person in any such violation, may be
held responsible for such violation as a principal.

46.     Defendants Moore and Dyer willfully aided, abetted, counseled, commanded,
induced or procured the violations of the Act alleged herein, or acted in combination or concert
with Defendants Johnson, Moore, Tracy, Harp and Dizona in the commission of the violations of
the Act as alleged herein.  Therefore, Defendants Moore and Dyer are liable for the violations of
the Act committed by Defendants Johnson, Moore, Tracy, Harp and Dizona as principals.

47.     Each and every act of aiding, abetting, counseling, commanding, inducing or
procuring the violations of the Act, or action in combination or concert with Defendants Johnson,

12

Moore, Tracy, Harp and Dizona in the commission of the violations of the Act are alleged herein as a separate and distinct violation of Section 13(a) of the Act, 7 U.S.C. §13c(a).

<strong><u>Count IV:  Controlling Person Liability</u></strong>

48.     Paragraphs 1 through 47 are realleged and incorporated herein by reference.

49.     Section 13(b) of the Act, 7 U.S.C. §13c(b), provides that any person that, directly or indirectly, controls any person who has violated any provision of the Act may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person if the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.

50.     Defendant Johnson directly or indirectly controlled Defendants Moore, Tracy, Harp, Dizona, and Dyer and failed to act in good faith, or knowingly induced, directly or indirectly, the acts constituting the violations.  Defendant Johnson is therefore liable for each violation by Defendants Moore, Tracy, Harp, Dizona and Dyer to the same extent as Defendants Moore, Tracy, Harp, Dizona and Dyer.

<strong>VI.     Relief Requested</strong>

WHEREFORE, Plaintiff Commission respectfully requests that this Court enter an order of permanent injunction:

A.     restraining and enjoining Defendants, from directly or indirectly violating Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2);

B.     directing Defendants to pay civil monetary penalties, to be assessed by the Court separately against each Defendant, in amounts not to exceed $120,000 for each violation or triple the monetary gain to them for each violation of the Act, as described herein;

C.      directing Defendants to make full restitution of funds received by them as a result of acts and practices which constituted violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

D.      directing Defendants, to disgorge, pursuant to such procedure as the Court may order, all benefits received, directly or indirectly, from acts and practices which constituted violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

E.      providing for such other and further remedial and ancillary relief as this Court may deem necessary and appropriate.

Dated: January 31, 2005

                            Respectfully Submitted,


                            Paul Hayeck, Associate Director
                            John Dunfee, Chief Trial Attorney
                            Joseph Konizeski, Senior Trial Attorney,
                                    Attorney In Charge

                            Commodity Futures Trading Commission
                            1155 21st Street N.W.
                            Washington, D.C. 20581
                            (202)418-5334
                            (202)418-5523 (facsimile)

JS 44 (Rev 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Commodity Futures Trading Commission

United States Courts
Southern District of Texas
FILED
FEB 01 2005
Michael N. Milby, Clerk

H-05-0332

**DEFENDANTS**

Denette Johnson, Courtney Moore, John Tracy, Anthony Dizona, and Kelly Dyer

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U S PLAINTIFF CASES)

County of Residence of First Listed ____ Harris
(IN U S PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(c) Attorney's (Firm Name, Address, and Telephone Number)

Joseph A. Konizeski
CFTC Division of Enforcement
1155 21st Street, N.W.

Attorneys (If Known)

Robert Sussman, Esq., Christopher Flood, Esq., David Gerger, Esq., George McCall Secrest, Esq., and Matthew Hennessy, Esq.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1  U S Government Plaintiff
[ ] 2  U S Government Defendant
[ ] 3  Federal Question (U.S. Government Not a Party)
[ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLA | DEF | | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ]1 | [ ]1 | Incorporated or Principal Place of Business In This State | [ ]4 | [ ]4 |
| Citizen of Another State | [ ]2 | [ ]2 | Incorporated and Principal Place of Business In Another State | [ ]5 | [ ]5 |
| Citizen or Subject of a Foreign Country | [ ]3 | [ ]3 | Foreign Nation | [ ]6 | [ ]6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| G 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | G 610 Agriculture | G 422 Appeal 28 USC 158 | G 400 State Reapportionment |
| G 120 Marine | G 310 Airplane | G 362 Personal Injury— | G 620 Other Food & Drug | | G 410 Antitrust |
| G 130 Miller Act | G 315 Airplane Product | Med Malpractice | G 625 Drug Related Seizure | G 423 Withdrawal | G 430 Banks and Banking |
| G 140 Negotiable Instrument | Liability | G 365 Personal Injury — | of Property 21 USC | 28 USC 157 | G 450 Commerce/ICC Rates/etc |
| G 150 Recovery of Overpayment | G 320 Assault, Libel & | Product Liability | G 630 Liquor Laws | | G 460 Deportation |
| & Enforcement of Jdgm | Slander | G 368 Asbestos Personal | G 640 R R & Truck | **PROPERTY RIGHTS** | G 470 Racketeer Influenced and |
| G 151 Medicare Act | G 330 Federal Employers' | Injury Product | G 650 Airline Regs. | G 820 Copyrights | Corrupt Organizations |
| G 152 Recovery of Defaulted | Liability | Liability | G 660 Occupational | G 830 Patent | G 810 Selective Service |
| Student Loans | G 340 Marine | **PERSONAL PROPERTY** | Safety/Health | G 840 Trademark | [X] 850 Securities/Commodities/ |
| (Excl. Veterans) | G 345 Marine Product | G 370 Other Fraud | G 690 Other | | Exchange |
| G 153 Recovery of Overpayment | Liability | G 371 Truth in Lending | | | G 875 Customer Challenge |
| of Veteran's Benefits | G 350 Motor Vehicle | G 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| G 160 Stockholders' Suits | G 355 Motor Vehicle | Property Damage | G 710 Fair Labor Standards | G 861 HIA (1395ff) | G 891 Agricultural Acts |
| G 190 Other Contract | Product Liability | G 385 Property Damage | Act | G 862 Black Lung (923) | G 892 Economic Stabilization Act |
| G 195 Contract Product Liability | G 360 Other Personal | Product Liability | G 720 Labor/Mgmt Relations | G 863 DIWC/DIWW (405(g)) | G 893 Environmental Matters |
| | Injury | | | G 864 SSID Title XVI | G 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | G 730 Labor/Mgmt Reporting | G 865 RSI (405(g)) | G 895 Freedom of |
| G 210 Land Condemnation | G 441 Voting | G 510 Motions to Vacate | & Disclosure Act | | Information Act |
| G 220 Foreclosure | G 442 Employment | Sentence | G 740 Railway Labor Act | **FEDERAL TAX SUITS** | G 900 Appeal of Fee |
| G 230 Rent Lease & Ejectment | G 443 Housing/ | Habeas Corpus | | G 870 Taxes (U S Plaintiff | Determination Under |
| G 240 Torts to Land | Accommodations | G 530 General | G 790 Other Labor Litigation | or Defendant) | Equal Access to Justice |
| G 245 Tort Product Liability | G 444 Welfare | G 535 Death Penalty | | G 871 IRS—Third Party | G 950 Constitutionality of |
| G 290 All Other Real Property | G 440 Other Civil Rights | G 540 Mandamus & Other | G 791 Empl Ret Inc. | 26 USC 7609 | State Statutes |
| | | G 550 Civil Rights | Security Act | | G 890 Other Statutory Actions |
| | | G 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause Do not cite jurisdictional statutes unless diversity.)

7 U.S.C. §1 et. seq. Defendants falsely reported trade information and attempted to manipulate the price of natural gas.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F R C P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE 1/31/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG JUDGE |
|-----------|--------|--------------|-------|-----------|

JS 44 Reverse (Rev 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**   **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **(b.) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.